# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TRAVIS EUGENE SIMS,

    Defendant.

Case No. 5:18-cr-40073-HLT

## MEMORANDUM AND ORDER

Defendant, who is charged with possession of a firearm by a prohibited person, moves to suppress the gun found during the traffic stop of the truck in which he was riding and statements he made during the stop. Doc. 17. He argues the traffic stop was not justified at its inception, making the gun and statements poisonous fruit of a Fourth Amendment violation. Alternatively, he argues that his statements were the product of un-*Mirandized*, custodial interrogation in violation of the Fifth Amendment. *Id.* The Court finds that law enforcement did not violate Defendant's Fourth Amendment rights. But the Court agrees with Defendant that law enforcement violated his Fifth Amendment rights by asking if he was a felon. The Court therefore suppresses Defendant's unintelligible response to this single question and denies the rest of the motion.

## I.  BACKGROUND[1]

On January 14, 2019, at approximately 9:35 p.m., Topeka Police Department ("TPD") Officers Jason Oyler and Michael Nelson were traveling behind a pick-up truck that had "Chevrolet Silverado" advertised on the rear tailgate. Officer Oyler, who was driving, observed

---

[1] During the October 4, 2019 hearing, the Court heard testimony from Officer Oyler and Officer Nelson. Based on the officers' demeanor and attentiveness during questioning—and given that, at times, they conceded facts not helpful to the government's case—the Court credits their testimony in its entirety. But the Court relays only those portions of their testimony relevant to its resolution of the motion.

that the left side of the truck's license plate was hanging down behind the bumper, partially obscuring the left numbers. Officer Nelson was only able to read the left two digits after the officers stopped directly behind the truck at a stop sign. He confirmed the numbers when both vehicles stopped at a second stop sign. Officer Nelson believed the plate was in violation of Kansas traffic regulations, so he entered the license plate number into the National Crime Information Center database and saw that it was registered to a GMC Sierra truck. This caused the officers to suspect that the truck was stolen. A few seconds later, Officer Oyler activated his emergency lights and relayed the license plate number to dispatch. Officer Oyler told dispatch that he did not need the tag to be checked because he knew it was not going to match the truck.

After pulling the truck over, the officers exited their cruiser and ordered the truck occupants to put their hands on the dash. Officer Oyler then explained to the female driver, Kelsey Kaberline: "The reason I stopped you was that the tag didn't come back to the truck, and it's only affixed with one screw." Officer Oyler smelled raw marijuana by this point, so he ordered Ms. Kaberline out of the vehicle, handcuffed her, and placed her in the back of the cruiser. Officer Nelson handcuffed Defendant, who was the passenger, and led him to the front of the cruiser. Officer Nelson then left Defendant with Officer Oyler, returned to the truck, and reported its vehicle identification number to dispatch. Officer Nelson searched the truck and found a Smith and Wesson pistol in the passenger side door. Officer Oyler, who was still standing at the front of the cruiser with Defendant, requested a check for felony convictions for both suspects. He then asked Defendant, "You a felon?" to which Defendant muttered something unintelligible. Officer Oyler then placed him in the back of the cruiser with Ms. Kaberline. Dispatch reported that Defendant had a felony conviction for attempted aggravated battery.

Meanwhile, Officer Nelson learned that the truck was a GMC Sierra by looking at the front of the truck. He continued searching the truck and opened a purse Ms. Kaberline had tried to reach for as she exited the truck. In the purse, he found methamphetamine and a glass pipe. About ten minutes after Officer Oyler asked Defendant whether he was a felon, Officer Oyler opened the rear door of the cruiser and requested the truck owner's phone number. Then, he pointed at Ms. Kaberline and stated: "Well, we found meth in your purse." He then pointed at Defendant and said, "And you are a convicted felon. So that's kinda where we're at right now, alright." Ms. Kaberline said the methamphetamine was not hers, and Defendant mumbled something. Officer Oyler asked "What?" and Defendant replied, "It's all mine." He then claimed to have put the methamphetamine in Ms. Kaberline's purse. Officer Oyler advised Defendant of his *Miranda* rights,[2] and Defendant invoked them.

Based on the evidence collected, a grand jury indicted Defendant on August 29, 2019, for possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Doc. 1. Defendant subsequently moved to suppress the gun, his response to Officer Oyler's inquiry of whether he was a felon, and his statements that "It's all mine" and that he put the methamphetamine in Ms. Kaberline's purse. Doc. 17.

## II.    STANDARD

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fifth Amendment provides that "no person shall be compelled in any criminal case to be a witness against himself." *Id.* at amend V. Both amendments have been incorporated against the states. *See Mapp v. Ohio*, 367 U.S. 643, 655-56 (1961) (Fourth Amendment); *Miranda v. Arizona*,

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).

384 U.S. 436, 467 (1966) (Fifth Amendment). Evidence obtained in violation of these rights is subject to suppression under the "exclusionary rule." *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963); *Miranda*, 384 U.S. at 479.

## III. ANALYSIS

Defendant contends that law enforcement violated his Fourth and Fifth Amendment rights during the January 14, 2019 traffic stop. The Court addresses each argument below.

### A. Fourth Amendment

Defendant argues that law enforcement violated his Fourth Amendment rights because the stop was not justified at its inception. Doc. 17 at 4-6. He contends that this violation mandates suppression of the gun and his inculpatory statements. In response, the government argues that the truck's partially obscured license plate justified the stop.

Because a traffic stop is a seizure under the Fourth Amendment, it must be reasonable. *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000). To determine whether a traffic stop is reasonable, a court must consider: (1) whether the stop was justified at its inception, and (2) whether the officer's actions during the stop were "reasonably related in scope" to the circumstances justifying the stop at its inception. *United States v. Morgan*, 855 F.3d 1122, 1125 (10th Cir. 2017) (quoting *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005)). A traffic stop is justified at its inception if it is based on an observed traffic violation or the officer has reasonable suspicion that the motorist has committed a crime. *United States v. Winder*, 557 F.3d 1129, 1135 (10th Cir. 2009).

Defendant argues the traffic stop was not justified at its inception. Defendant explains that Officer Oyler told Ms. Kaberline that he stopped the truck because a screw was missing from the

license plate. Defendant contends that a missing screw does not violate the law and, therefore, law enforcement did not have a basis for initiating the traffic stop.

The Court finds that the traffic stop was justified at its inception. Kansas law states that:

> Every license plate shall at all times be securely fastened to the vehicle to which it is assigned so as to prevent the plate from swinging, and at a height not less than 12 inches from the ground, measuring from the bottom of such plate, in a place and position to be <u>clearly visible</u>, and shall be maintained free from foreign materials and in a condition to be <u>clearly legible</u>.

K.S.A. § 8-133 (emphasis added). This statute requires a license plate to be clearly visible and clearly legible. *United States v. Orduna-Martinez*, 561 F.3d 1134, 1138 (10th Cir. 2009) (noting that "the display of an illegible or obscured" tag violates this statute (quoting *State v. Hayes*, 660 P.2d 1387, 1389 (Kan. App. 1983))). Here, the license plate canted downward behind the bumper, which resulted in the bumper partially obscuring the first few numbers. *See Hayes*, 660 P.2d at 1389 (stating that "<u>all</u> of the tag must be legible" (emphasis added)). The officers could not read and confirm these numbers until stopped directly behind the truck at a stop sign. Based on these facts the officers had (at a minimum) reasonable suspicion that the license plate was not clearly legible and was not clearly visible as required by K.S.A. § 8-133. *See United States v. Rubio-Sanchez*, 2006 WL 1007252, at *1 (D. Kan. 2006) (concluding that "[a] tag is 'clearly legible' on a moving car if it is capable of being read by an officer in a car immediately following a safe distance behind"); *United States v. Granados-Orozco*, 2003 WL 22213129, at *2 (D. Kan. 2003) (observing that the purpose of license plates is to enable officers to identify vehicles and that it would be unreasonable to require officers to stop vehicles to read their plates).

The Court recognizes that Officer Oyler did not expressly identify these issues to Ms. Kaberline as the basis for initiating the traffic stop. But, after considering the evidence, it seems that his statement to her about the missing screw is the explanation for why the license plate was

not clearly legible and clearly visible. And, regardless of his statement to her, his observations about the license plate being partially obscured behind the bumper objectively justifies the stop. *See United States v. Eckhart*, 569 F.3d 1263, 1271-72 (10th Cir. 2009) (holding a stop for an illegible license plate was justified, not because it was illegible from 100 feet away, as the officer reasoned, but because the license plate light was not working).[3]

### B. Fifth Amendment

Defendant next argues that law enforcement violated his Fifth Amendment rights by interrogating him while he was in custody and before advising him of his *Miranda* rights. The Fifth Amendment protects individuals from being compelled to incriminate themselves. To protect this right, the United States Supreme Court in *Miranda* established procedural safeguards that law enforcement must satisfy before beginning a custodial interrogation. *Miranda*, 384 U.S. at 444-45. If law enforcement fails to satisfy these safeguards, an individual's incriminating statements given while "in custody" and resulting from an "interrogation" are generally suppressed. *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008).

Defendant contends that his unintelligible response to Officer Oyler's question "You a felon" and his statements that "It's all mine" and that he put the methamphetamine in Ms. Kaberline's purse are incriminating statements that resulted from un-*Mirandized* custodial interrogations and, therefore, must be suppressed. The parties agree that Defendant was in custody at the time of these statements. But they disagree as to whether his statements were in response to an interrogation.

---

[3] During the motion to suppress hearing, Defendant argued for the first time that the officers exceeded the scope of the stop when they searched the truck. The Court disagrees. Officer Oyler smelled raw marijuana at the beginning of the traffic stop, which gave the officers probable cause to search the truck. *United States v. Snyder*, 793 F.3d 1241, 1244 (10th Cir. 2015) (holding that the smell of marijuana alone provides probable cause to search the passenger compartment of a vehicle without a warrant). Thus, the Court finds that the officers did not exceed the scope of the stop when they searched it.

An interrogation occurs whenever a person in custody is subject to express questioning or its "functional equivalent" (i.e., words or actions that police should know are reasonably likely to elicit inculpatory statements). *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). The Court finds that Officer Oyler's question "You a felon" is an express question that is likely to elicit an inculpatory statement. Stated differently, had Defendant answered this question in the affirmative, the government would likely seek to introduce his response at trial to prove knowledge of his felon status. *See Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019) (holding that the government must prove both that the defendant knew he possessed a firearm and knew that he belonged to a category of persons barred from possessing a firearm when prosecuting a violation under 18 U.S.C. § 922(g) and § 924(a)(2)). There is no evidence that Officer Oyler asked this question as a trick to extract an unsworn statement from Defendant. But Defendant was in custody, he had not been advised of his *Miranda* rights, the government has not offered an explanation for the question, and Defendant's response was likely to incriminate himself. *See United States v. Perkins*, 2019 WL 1026376, at *9 (E.D. Mo. 2019) (finding the public safety exception not applicable to certain questions and suppressing the defendant's response to "Are you a felon" because the response tended to incriminate him). Accordingly, the Court suppresses Defendant's response to this question.

The Court, however, does not suppress Defendant's other statements because they were voluntary and were not the result of a custodial interrogation. After searching the truck and attempting to locate the truck's owner, Officer Oyler advised Defendant and Ms. Kaberline about the results of the search and the status of the stop. Officer Oyler then followed up on Defendant's mumbled response. Officer Oyler did not ask an express question that was likely to evoke an incriminating statement, posit the guilt of either individual, assess blame, comment on either

individual's demeanor, or otherwise engage in behavior likely to invite an incriminating response. *See United States v. Douglas*, 1994 WL 524981, at *2 (10th Cir. 1994) (finding the detective's statement to the defendant that the defendant's brother was also being arrested on the same charge was not an interrogation and, instead, was attendant to custody); *cf. United States v. Rambo*, 365 F.3d 906, 909 (10th Cir. 2004) (affirming district court's conclusion that officer's statement to the defendant that much of the blame will fall on the defendant's shoulders amounted to an interrogation); *United States v. Reyes*, 202 F. Supp. 3d 1209, 1212, 1214 (D. Kan. 2016) (finding an officer was positing the guilt of the suspect when he stated, "you seem pretty nervous about getting the car out of there, makes me think that there's something illegal in the car"). Rather, Officer Oyler's comments were routine and a normal part of the process. *Innis*, 446 U.S. at 301 (excluding words or actions that are "normally attendant to arrest and custody"). And Defendant's spontaneous statements were unexpected, unsolicited, and voluntary. Although Officer Oyler followed up on Defendant's mumbled statement, that did not convert the interaction into an interrogation. Thus, the Court finds Defendant's statements that "It's all mine" and that he put the methamphetamine in Ms. Kaberline's purse were not the result of a custodial interrogation and, therefore, will not suppress them.[4]

## IV. CONCLUSION

The Court concludes that law enforcement did not violate Defendant's Fourth Amendment rights because they had reasonable suspicion of a traffic violation based on the partially obscured license plate. The Court suppresses Defendant's response to Officer Oyler's "You a felon"

---

[4] Neither party argues that Defendant's response to Officer Oyler's felon-status question taints his subsequent statements, so the Court does not address it. Regardless, the Court finds that his subsequent statements were knowing and voluntary given the lapse in time, the context and circumstances, the nature of Officer Oyler's statement, and the lack of a question to Defendant. *See United States v. Pettigrew*, 468 F.3d 626, 636 (10th Cir. 2006); *United States v. Mitchell*, 2006 WL 3246915, at *2 (D. Kan. 2006) (suppressing a statement elicited during a custodial interrogation but not the defendant's subsequent unsolicited comments immediately following).

8

question because this question constituted an un-*Mirandized* custodial interrogation. The Court rejects Defendant's other Fifth Amendment challenges.

THE COURT THEREFORE ORDERS that Defendant's Motion to Suppress (Doc. 17) is GRANTED IN PART and DENIED IN PART. The Court suppresses Defendant's response to the question "You a felon" and denies the rest of the motion.

IT IS SO ORDERED.

Dated: October 28, 2019  /s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE